Could we hear next from the parties in the United States v. Sika? Good morning, Your Honors. Theodore Green for Dennis Sika. Your Honor, in this appeal, primarily from Mr. Sika's sentence, the court made a guideline calculation placing Mr. Sika at a base offense level at the very top of the guidelines chart, level 43. And that, we submit, was premised on an erroneous determination of the guidelines that renders the sentence procedurally unreasonable with respect to this point in our brief. One of the errors was that the particular guideline 2D1.1A1 requires that two things be established by the offense of conviction in order to apply the guideline. And those are, number one, that death or serious bodily injury resulted from the use of the controlled substance that was distributed, and number two, that the defendant committed the defense after one or more prior convictions for a similar offense. In other words— Am I right that these matters are being reviewed for plain error? I beg— Am I right that the standard of review for us is plain error, that these arguments were not raised in the district court? We did not raise this particular point, Your Honor. All right, so you're going to have to be able to point us to clearly established law on these issues, so go ahead, please. Well, I think the clearly established law is the guideline itself. I have not found any case that— Well, isn't that a problem? —rules that this—I beg your pardon, Your Honor? Isn't that a problem? I don't think so because I think the guideline itself is clear. I mean, the fact that the court and the parties may have missed it doesn't mean that it's not plain because a plain error assumes that it was missed. Your argument for— Yes. —guidelines relies very much on the 1987 amendment deleting the application note about the definition of similar offense. Am I correct? Well, that's one of our arguments, and that one— All right, well, let me let you make your argument. Okay. That second argument, Your Honor, is not plain error. There's no issue of plain error because we did raise that ground below. We argued that Mr. Sika belonged in basal offense level 38, not 43 for the ground. The ground that we raised was a different one that I started out my argument with. Okay, let me let you make your argument. So our first argument, which if the court doesn't accept that because we said he's in 38 that that's not enough to preserve it, the guideline is plain. It says that there's two requirements that must be established by the offense of conviction, and one of them is that the defendant have a prior similar crime. Now, even if that means just a prior drug felony, there is a procedure for establishing that by an offense of conviction, which as we all know is 21 U.S.C. 851. It requires that an information be filed and that the conviction be established. Mr. Sika was not established to be a prior drug felony under that procedure, and therefore his offense of conviction does not establish that he had that prior conviction. In other words, the offense that he pleaded guilty to in front of the district court here did not establish the existence of this prior conviction. Well, that gets into two issues. Yes. Does it have to be a prior felony drug conviction or does it have to be a prior felony drug conviction resulting in death? You're right. But I also understood you to be saying that even if it only has to be a prior felony drug conviction, the guidelines require the resulting death in the present instance to be an element of the crime of conviction that he's pleading to or being found guilty of. Have I misunderstood that? I think, yeah, there's one aspect that I think Your Honor did not mention. The guideline says that two things need to be established by the present conviction, the conviction that Mr. Sika pleaded guilty to before Judge Seibel. One of those is that death resulted from the drugs distributed. And that has to be an element of the crime? Yes. And you're saying that's not present here because your client was allowed to plead to a lesser charge? No, no. We're not disputing that the judge allocuted him as to death results. I mean, we have a separate issue about whether all the elements were met. But assuming that allocution was valid, there was another thing that needed to be established by the offense of conviction, and that is that Mr. Sika was a prior drug felon. And you would require the filing of a prior felony information under 851. Exactly. That's what you read into 2D1.1. Exactly. Because what else could it mean that the present offense of conviction established the prior offense of conviction? That would mean a life sentence for your client. Yes. And that's all the more reason to understand that the sentencing commission intended this level 43 guideline for a very small class of defendants. Let's stick with that. Yeah. Our sister circuits are split on that question, and I don't understand us to have spoken to it. So how do you have plain error on that question? Well, see, that branch of our argument was preserved. So we don't think plain error review is correct. Where did you preserve that question that the offense of conviction had to be an element? Oh, that I did not. That we did not raise. And that's what I'm asking you is how do we reach that question? Well, Your Honor, actually, I don't believe that there's a circuit. I don't believe any circuit has actually written on that. They've written on the other issue that we raised. I know it's confusing, but the issue that we're raising on appeal regarding the requirement that the offense of the prior drug felon be established by the present offense of conviction, there's not a circuit split on that that I know of. But that doesn't help you. You need to show us that this is clearly established in the law. And I don't think you've got a Supreme Court case, and I don't think you've got a Second Circuit case. So where should we look? Well, I have the guideline itself, Your Honor. And the guideline itself, I think, is plain. The plain language of the guideline itself says that the prior felony has to be established by the offense of conviction. Isn't the case law that something has to be clearly established in Supreme Court or circuit precedent? To be plainer? Yes. Well, I've dealt with that standard certainly in habeas corpus cases, in state habeas cases, where the standard is that to raise something, a federal violation by a state convicted person, there needs to be a showing that there was clearly established federal law. Let me take another tack. Yes. What are we to make of the fact that Judge Seibel explicitly said that she would impose the same sentence, even if she had agreed with your proposition about 2D1.1, as a matter of plain error? Well, I think there are several reasons why that statement in and of itself is not enough to render this sentence harmless. Number one, it was a significant guideline increase of five levels. The difference between a life sentence and a sentence with a range is a difference of degree, and it's a difference of character. There's no sentence quite like a life sentence in the guidelines. And I also believe, for the reasons that I've been arguing- The bottom of the range, if it had been 360 to life. Right. Well, right. The fact that the court gave a sentence above the guideline range, I think, is a factor above even a 30 to life range, which we think the guideline should have been. I think that's an argument in favor of finding that there was prejudice here. The court was using, as an anchoring point, a baseline guideline of life. And so I don't think we can really have a lot of confidence that this didn't affect the court's thinking. Certainly- But she expressly said so. And we've indicated in precedent that where it's absolutely clear that it would have been the same sentence, then we have harmless error. And this is a judge who said so. I mean, this is a case in which she viewed your client as being responsible for deaths. I understand, Your Honor. But I don't think it's really quite that clear. I mean, the court did say, for whatever it's worth, I would have given the same sentence. But also, I think you have to look at the nature of the error, which was we submit, based on a really fundamental misunderstanding of what the sentencing commission intended. They didn't attend this broad application of the life guideline to every drug felon who is prosecuted under the death results aggravated statute. And so I don't think that the court can confidently say- If we were to remand and say that the correct range is 360 to life, she's indicated that in those circumstances she would impose the same sentence anyway. So what is the point? I mean, I understand that the courts take account of those statements. I mean, my position is that they're really made under artificial terms. And because the guideline that was found was life, and it's so much different from what the correct guideline would have been, the potential impact on the court's thinking, I think, is just too great to just assume that it made no difference in the sentencing thinking. Mr. Green, I know you want to reserve some time. Yes, Your Honor. All right. Thank you. May it please the Court, my name is Scott Hartman, and I represent the government on this appeal, and I represent the government in the district court below. I'd like to start by addressing just the framework in which this sentencing took place. Mr. Seca pled guilty on the morning of jury selection to distributing drugs that resulted in the death of three people. He admitted, as part of his guilty plea allocution, that the drugs that he sold resulted in the death of these three people. And that is an element of the offense. We can see that under Burrage. And as a result of that admission, he exposed himself to a mandatory minimum sentence of 20 years and a maximum sentence of life under the statute. So Judge Seibel, when it came time for sentencing, was operating within that statutory framework. Now, there are two issues that the defendant raises on appeal with respect to the application of the guidelines when it comes time for sentencing. One of them was forfeited and not raised before the district court. The other one was. The issue that was forfeited is this issue of whether or not the government was required to file a prior felony information under Section 851 in order to have applied the A-1 base offense level of 43. So that's the first issue. And that issue was. 2D1.1A1. That's correct, Your Honor. I'm sorry. The language of that section is it requires his prior convictions for a similar offense to be established by the offense of conviction. That's correct. How does that not mean that it has to be an element of the offense of conviction? Well, Judge Radji, I think the court, or what the guideline says is it must be established by the offense. It doesn't say exactly how. And here what you have is a district court's finding at the time of sentencing with respect to the defendant's criminal history. We cite the Whitaker case, which talks about when it is that the district court should apply the career offender guidelines. And what the court says there is that 851 notice is required only where the statutory penalty is sought to be enhanced. Here, everyone agrees. Enhancement statute, a statutory provision really doesn't apply to anything else. That's correct. That's the way 851 works. It deals with what the statutory sentencing range is. What you're saying is that we can construe this language so that the government can enter into plea agreements with a defendant that let him plead to the lesser charge of the murders without admitting the prior felony, but then if you've got it, if you show it at sentencing, it's good enough? Well, Judge Reggie, just to be clear, that's not where we are here. There was no plea agreement here. The defendant pled open. How did you prove it here? How did you prove it as part of the offense of conviction? I'm sorry. You're saying with respect to the prior felony? Is that what we're talking about? Yes, Judge Reggie. You're saying you can prove it without it being an element, so you don't make him plead to that aggravated element, which would expose him to a mandatory life sentence. How did you prove it as part of the offense of conviction? Well, under Molina-Martinez, even if we had filed the ‑‑ I'm sorry, under Almendarez-Torres, which is the Supreme Court's decision from 1998, even if we had filed the prior felony conviction, that would not have had to be submitted to the jury. So there's a lot of talk in Mr. Green's ‑‑ Answer that question. I mean, did he, for example, during his elocution, admit to being a prior felon? He did not admit to that. You put it forward and, you know, as part of the elocution. I'm just ‑‑ you've acknowledged that it has to be established by the offense of conviction because that's what the guideline says, but you say it doesn't have to be an element. So how do you prove it as part of the offense of conviction? Well, I think the circumstances of the offense of conviction establish it. The defendant's criminal history is something the court takes into account every time it conducts a sentencing proceeding. But I'm not sure we've ever said that makes it part of the offense of conviction. Well, I mean, the offense of conviction takes place within a defendant's criminal history. That's the way that the court goes about conducting a sentencing. And when you have a defendant who has ‑‑ this defendant actually had, I think, five or six prior drug felony convictions, and that was well known to the parties. That was a source of discussion. That was in the PSR. That was in the PSR. Was that part of it objected to by Mr. Seca? No. And ‑‑ That part of the PSR. No, Your Honor. There was no dispute that he had these prior felony convictions. They were part of the pembentel letter that was given to him on the morning of the plea. And it was well known to everyone who was involved that the defendant had these prior felony convictions. There was actually a discussion in advance during the course of plea negotiations in this case about whether the government should file the prior felony information, and we elected not to. But there was really no dispute about how this came about and whether or not the defendant would be subject to this. It says that everything that's considered in sentencing becomes part of the offense of conviction. We can't ‑‑ I don't know of any that I can point to, Judge Radji, but as the court noted earlier, we don't have to point to that because we are dealing with a plain error review with respect to this issue. I just wanted to make sure I understood the government's position on the merits. All right. Judge Radji, I think reading this language in the guidelines provision, it doesn't say that the government has to file a prior felony information. I'm not aware of any other provision in which the government would have to do something that would affect the statutory range in order for a guideline enhancement that's based on a sentencing finding to apply. Here we have a circumstance where the district court looked at the defendant's criminal history and made this finding, and we think the Whitaker case ‑‑ I don't want to repeat this, but the guidelines make clear that this particular guideline is meant to track the statute. That's right. And the statute has the possibility of this being an element and then there being a life sentence. That's correct. I mean, I'm not sure that you can argue, well, they didn't mean to track the statute in this section when they say they meant to track the statute. Well, there are other places where the guidelines track the statute. In fact, all of 2D1.1 tracks the statute. For example, if a defendant pleads guilty and admits as part of his plea agreement and it's a factor that the court considers as sentencing that he distributed 280 grams or more of crack, the guidelines fix the offense level for that at 10 years, even if the defendant pled to some other offense for which there's no mandatory minimum. So the guidelines are ‑‑ The guidelines say that the quantity has to be established by the offense of conviction. That's correct. That's correct. Okay. Do you have other arguments you want to pursue? With respect to this issue of whether or not the conviction resulted in death, the prior conviction resulted in death, that was preserved, and there are two circuits that have weighed in on that issue, the Sixth Circuit in Johnson and the Eleventh Circuit in Westry. They both come out on the same side as the government on that issue, that the prior conviction is simply a prior drug conviction. That's, in our view, consistent with the plain language of the guideline. Again, this is an effort to match the mandatory minimum sentences, and the amendment history of the statute, or of the guideline, we think actually weighs in favor of our argument for the reasons that we set forth in our brief. The tracking of the statute and the guideline would favor the argument you're advancing, right? That's correct, Justice Radley. There's separately this issue of foreseeability. We think there's really no room for disagreement on this. Every circuit that's weighed in on the issue, and there are five of them, have rejected the argument that the defendant is advancing here. I will note that given the facts that were present in this case and in the PSR, there is an argument that the defendant, it was foreseeable to the defendant that people would die as a result of the drugs that he was selling, and that's actually something that Judge Seibel took into account in fashioning the sentence in this case. One of the things she pointed to was the fact that this is a defendant who had a warning after the first death. He knew that the substance he was distributing was killing people, and he went ahead and kept doing it, and he tried to cover his tracks, as it were. That's certainly an aggravator. It's one that Judge Seibel took into account in fashioning the sentence that she did. There are others, too. The offense level under the guidelines doesn't factor in the issue of the fact that there were multiple deaths. There's nothing in the rote application of the guidelines that does that. There's nothing in the rote application of the guidelines that takes into account the fact that the defendant had so many prior drug felonies because at a certain point they stopped counting, and that's what happened here. And so what Judge Seibel was doing was she was applying a global view of what the offense conduct was and what this defendant's criminal history was, and coming out with a sentence that, as she said at sentencing, was the minimum sentence she could possibly stomach imposing. And so this gets really to the issue of harmlessness and whether any of these guidelines issues affect the defendant's substantial rights. And what we would say, Judge Raggi, is exactly what the Court said in JAS, which is an opinion by this Court, which is that... By Judge Raggi. By Judge Raggi, in fact. It's a decision of the Court. It's not my decision anymore. Which is that when the district court is very clear and contemplates an alternative guidelines range and says, you know what, even under that scenario I would apply the same range, I would apply the same sentence, there's no effect on the defendant. The error is harmless, or the defendant's not prejudiced, depending on whether you're operating under a harmless error or a plain error. Thank you very much. Mr. Green, you did reserve some time. 2D1.1A1 is different from other guidelines that were criminal history calculations that the courts can permissibly find by a preponderance of evidence because it contains this language requiring that the prior felony be established. Do you really want that? What you should think about is the implications of requiring the government to file a prior felony information in these cases where there is no walking back. Once a chief of narcotics signs that prior felony information, or the U.S. attorney, whoever it is, that's it. And then you are tagged with life, mandatory life. So is this really an argument that you want to make? Very much so, Your Honor. First of all, I have some faith in the government's exercise of discretion about when to charge people as predicate felons. It's a big step. But more importantly, Your Honor, I think, and this goes to the issue. Technically, there is a view out there that the government has no discretion when it comes to filing a prior felony information. Well, certainly they do. Technically, but in the Southern District of New York, that's a different matter. But you're asking us to require, in effect, the government to file a prior felony information every time that's available. Absolutely not, Your Honor. The government obviously retains the discretion whether to do that or not. But here, the sentencing commission recognized, I think, that by putting every criminal history category at the top of the sentencing chart, if the offense of conviction establishes a prior drug felony, was clearly deferring to the will of- With deaths. With deaths, yes. Yes, Your Honor. Yeah, those two elements. Was clearly deferring to the will of Congress, which imposes, mandates a life sentence for every defendant, even if they're in Category 1. And this was the fundamental misunderstanding, respectfully, of the district court, which is why we don't think this was harmless. Because- Well, why isn't it? I mean, if the government had filed it, your client would be sentenced to life. Instead, the district court viewed this as a particularly serious commission of this crime. But he had the benefit of the plea, and so she gave him 420 months instead of life. But she wasn't going to give him the minimum, given the circumstances where he continued to sell drugs after the first death. But the anchor for the court, or the starting point, or the lodestar, or whatever different words that the court used, was life. And it was- That was the guideline. But it was premised on an incorrect view of what the sentencing commission intended. The sentencing commission didn't take a considered view of, should we impose level 43 for every such defendant, regardless of criminal history category? There was no reason for them to do so, because Congress mandated that every one of those defendants must face life. All right. Thank you very much. We'll take the matter under advisement. Yes, Your Honor.